Plaintiff filed suit against Mrs. Mattie W. Booth Stanfill, George W. Wise and Mrs. Jake Wise Johnson, the last two defendants being the children of Mrs. Stanfill, alleging damages arising out of interference with •certain leasehold rights alleged to be owned by plaintiff to a ten-acre tract of land located on Black Lake in Natchitoches Parish, Louisiana.
Plaintiff alleged that Mrs. Stanfill, (then Mrs. Booth), was the owner of the property, .and leased it to R. H. Brigmon on September 23, 1940, for a term of ten (10) years, with an option to renew for an additional ten (10) years. Plaintiff alleged that he purchased this lease from Brigmon on April 15, 1946, and that he paid regularly the annual rentals, which were accepted by Mrs. Stanfill in the years 1946 through 1949, and that he tendered the rentals on each succeeding year.
Plaintiff alleged that he rented the property first to a man named Poole, and then, after having built a road to the property at an expense of $400 or more, he rented the property to J. T. Jarrell at $50 per year.
Plaintiff alleged that in 1949, after having accepted the rental for that year, the defendants began interfering with his rights to peaceable possession of the leased premises by telling Mrs. Poole, whose husband had died, not to pay any further rent to plaintiff. Plaintiff alleged, further, that defendants conspired and connived with plaintiff’s second tenant, J. T. Jarrell, beginning with the ninth year of the lease, by instructing Jarrell not to pay any rent to plaintiff, and thereby, directly or indirectly, took possession of the leased premises, and caused plaintiff damages by making it almost impossible for plaintiff to collect rent from J. T. Jarrell. Plaintiff also alleged damages for arbitrary breach of contract.
In addition, plaintiff referred to the allegations in a prior petition in another suit which was filed by the defendants herein against plaintiff herein for cancellation of the lease granted September 23, 1940, wherein the defendants had alleged that plaintiff was responsible for two (2) houses that had been removed from the leased property. On the basis of these allegations, plaintiff alleged damages for slander and libel, and for unnecessary work expanded by plaintiff in defending against that portion of the other suit.
With reference to venue, plaintiff alleged that the property was located, the breach of the lease contract occurred, and the defendants took possession of the property in Natchitoches Parish.
The defendants filed an exception to the jurisdiction ratione personae, alleging that they were non-residents of Natchitoches *420 Parish, and taking the position that the plaintiff’s suit was based on breach of contract. Defendants also filed an exception of lis pendens on the basis of their own suit which had been previously filed against plaintiff for cancellation of the lease.
The trial court maintained the exception of jurisdiction ratione personae. Plaintiff appealed to the Court of Appeal, Second Circuit, where the trial court’s judgment on the exception of jurisdiction was reversed, and the case was remanded for further proceedings. See Gibbs v. Stanfill et al. (La.App., 2 Cir., 1957), 94 So.2d 582, wherein, the appellate court held that although plaintiff had phrased his itemized claims for damages in his petition in a manner which indicated he based his claim upon breach of contract, this was not controlling since the plaintiff had also charged defendants with certain wrongful acts,[1] which, under the broad construction of the term “trespass” brought his case within the venue exception as provided in Article 165(9) of the Code of Practice, to-wit:
“Trespass. In all cases where any person, firm or domestic or foreign corporation shall commit trespass, or do anything for which an action for damage lies or where any domestic or foreign corporation shall fail to do anything for which an action for damage lies, such person, firm or corporation may be sued in the parish where such damage is done or trespass committed or at the domicile of such person, firm or corporation.”
Defendants then filed an answer, generally denying the allegations of plaintiff’s petition, and requested an advance hearing on a special defense of no cause of action. This defense was based on a final judgment in another suit that defendants had filed against plaintiff herein, wherein the lease originally granted to Brigmon, and the assignment of the lease to plaintiff herein, were declared null and void and of no effect. See Stanfill v. Gibbs, (La.App., 2 Cir., 1957), 98 So.2d 565. The special defense was overruled. Defendants then filed an exception of no right of action on the same basis, which was referred to the merits. The exception of lis pendens filed in the instant case was abandoned in view of the final decision in the other case.
The trial court rendered judgment on the merits for the defendants, and plaintiff has appealed to this Court.
Plaintiff maintains that he held leasehold rights which were in full force and effect until they were terminated by judicial decree in 1957. He maintains that he acquired the leasehold rights either by assignment of the lease from Brigmon or directly from Mrs. Stanfill by reconduction since she accepted rental for the years 1946 through 1949. Under either basis, plaintiff maintains that the relationship of landlord and tenant continued after 1950 until the judicial decree in 1957, since it was not otherwise terminated by agreement between the parties.
Plaintiff maintains that defendants, instead of taking action through the courts, unlawfully violated the duty of a landlord to maintain his tenant in peaceful possession by certain wrongful acts, which caused plaintiff damages. Plaintiff also maintains that defendants interfered and meddled with the sub-tenant, Jarrell, by telling him not to pay rent to plaintiff, and appointed or attempted to appoint Jarrell as caretaker of the property, making it impossible for plaintiff to collect approximately $175 in rental from Jarrell. Plaintiff contends that this constituted an attempted enforcement of a legal right, other than through the courts, for which damages should be allowed. In support of this argument, plaintiff cites *421 Article 2692 of the LSA-Civil Code, and several cases which hold that a lessor is obligated to maintain the lessee in peaceable possession and that a landlord has no right to obtain possession of the leased premises by ejecting a tenant without resorting to the means provided by law.
Plaintiff urges that he is entitled to damages for the arbitrary acts of defendants in breaching the legal relationship of landlord and tenant. Plaintiff also contends that the allegations in the other suit filed against him by defendants, alleging him to be responsible for two (2) houses formerly located on the property, were slanderous and libellous in that they implied that plaintiff had wrongfully removed the houses from the property.
Defendants take the position that the judgment in Stanfill v. Gibbs, supra, which annulled the lease to Brigmon and its attempted assignment to plaintiff, is res judi-cata, and that plaintiff’s suit is reduced to a claim for damages for violation of de fac-to rights, in that plaintiff asserts that defendants used strongarm tactics in ousting plaintiff from the property instead of appealing to the courts. Defendants argue that there is no evidence of any strongarm actions taken by defendants. Defendants state that the authorities cited by plaintiff do not support the position of plaintiff, and direct our attention to that portion of LSA-C.C. Article 2692 which provides that the obligation of the lessor to maintain the lessee in peaceable possession of the thing specifies particularly that this duty continues only “during the continuance of the lease”.
Defendants maintain that the prior case is also res judicata relative to the demand for damages for breach of contract, pointing out that any leasehold of plaintiff had lawfully terminated; further, that the allegations in their petition in the other suit were not libellous, in that they were material, and made with probable cause and without malice.
For a clearer understanding of the issues before this Court, the facts will be set forth in chronological order.
The defendant, Mrs. Mattie Stanfill, born Mattie Wilkerson, was married three (3) times. The other defendants, George Wise and Mrs. Jake Wise Johnson were born during Mrs. StanfiU’s first marriage to Jake Wise. After Mr. Wise’s death, Mrs. Stan-fill married Edwin (Ted) Booth, and during this marriage Edwin Booth, Jr. was born. On April 2, 1935, during her marriage with Booth, a certain ten-acre tract of land on Black Lake, in Natchitoches Parish, was acquired in her name. Mr. Booth died September 16, 1940. On September 23, 1940, the defendant, Mrs. Stan-fill, (then Mrs. Booth), executed a written lease of the property to R. H. Brigmon, for a ten (10) year term, with an option for renewal for ten (10) additional years. Under the terms of the lease, Brigmon w?.s to pay rental of $5.00 per year and was to furnish fishing camp facilities to Mrs. Booth without charge.
Mrs. Mattie W. Booth married Mr. Fred Stanfill on May 11, 1942. This ended her usufructory interest in the portion of the property inherited by Edwin Booth, Jr-. On November 27, 1943, at age 17, Edwin Booth, Jr. was killed in an automobile accident. The defendants inherited the interest of Edwin Booth, Jr. in the property herein. The property was then owned in indivisión, with Mrs. Stanfill holding a 10/i<¡th interest, and each of the other defendants holding a Yieth interest.
On April 15, 1946, plaintiff obtained the alleged assignment of the lease originally held by R. H. Brigmon, and notified Mrs. Stanfill by correspondence dated August 9, 1946. Mrs. Stanfill replied and stated, in. effect, that she considered the lease to R. H. Brigmon void, but that possibly they could get together on a new lease on the property.
For the years from September, 1946, through September, 1950, the defendant, Mrs. Stanfill, accepted the $5.00 per year *422 rental for the ten-acre tract of land, except for one year when the plaintiff applied the $5.00 rental to taxes against the property.
On September 1, 1946, plaintiff executed a lease of the property to a man by the name of Poole; and then on July 5, 1950, to J. T. Jarrell, at which time plaintiff acknowledged receipt to Jarrell for rental of $10.00 to September 23, 1950, and the two agreed to a continued rental thereafter at $5.00 per year.
Plaintiff tendered to Mrs. Stanfill rental of $5.00 for the period from September, 1950, through September, 1951. This tender was returned to him by correspondence dated September 8, 1950, signed by George W. Wise, acting on behalf of the defendants, wherein it was stated, in effect, that the defendants did not recognize any leasehold rights on the part of plaintiff. All subsequent tenders of rental by plaintiff were refused.
J. T. Jarrell continued to occupy the leased property. George W. Wise, acting on behalf of the defendants, expressed his opinion to Jarrell that plaintiff did not have a valid lease on the property, and that if he were Jarrell, he would not pay any further rental to plaintiff. He also told Jarrell that he could stay on the property until his death.
On September 24, 1952, plaintiff instituted a suit against J. T. Jarrell for rental of the property, and later obtained a judgment, on which he effected collection. George W. Wise assisted Jarrell by typing an answer in that proceeding, under the direction of Jarrell, wherein it was alleged that plaintiff did not have a lease on the property and that Jarrell had been appointed by the owners as caretaker.
On March 4, 1953, the defendants, in Stanfill v. Gibbs, supra, instituted their suit against the plaintiff herein asking that the lease originally granted to R. H. Brigmon, described hereinabove, and its purported ássignment to plaintiff herein, be declared null and void, and further asking for a judgment against the plaintiff herein in the amount of $600.00, being the value of two (2) buildings alleged to be located on the property at the time the original lease was granted, claiming that the buildings had been torn down and removed from the property without their consent. This claim for $600.00 was abandoned prior to trial.
On March 29, 1955, plaintiff sued J. T. Jarrell a second time in still another proceeding, and obtained an uncontested judgment for rent against Jarrell in the amount of $175.00, plus interest and costs. Plaintiff effected a seizure and sale in that suit of a building owned by Jarrell located on the property herein involved. The sale brought plaintiff the net sum of $35.15, after costs, and plaintiff has not been able to effect collection of the balance of this judgment against Jarrell.
On June 25, 1957, in the defendant’s suit against plaintiff, the court rendered judgment which annulled the lease originally granted to R. H. Brigmon, and its purported assignment to plaintiff, and directed the Clerk of Court for Natchitoches Parish to mark the original lease and the purported assignment of this lease to plaintiff herein as null and void and of no effect. Plaintiff herein appealed that case to the Court of Appeal, Second Circuit, where the appeal was dismissed for lack of jurisdiction ratione materiae, since the rental involved in the lease did not exceed one hundred dollars. See Stanfill v. Gibbs, supra.
The instant case was tried May 23, 1961. The plaintiff, John G. Gibbs, was the only witness who testified. Plaintiff introduced into evidence the prior suits mentioned above, except his first suit for rental against J. T. Jarrell. The defendants called no witnesses, but also introduced into evidence the record of their suit against plaintiff, namely, Stanfill v. Gibbs, supra. On motion to re-open by the plaintiff, the court allowed into evidence the answer filed by J. T. Jarrell in the first suit for rental against Jarrell, and also a deposition of George W. Wise.
*423 The first matter for determination is the legal status held by plaintiff relative to his leasehold rights to the ten-acre tract of land. We are bound by the decision in the case of Stanfill v. Gibbs, supra, which is determinative of the issue that plaintiff held no leasehold rights under the original lease obtained from R. H. Brigmon, it being res judicata, and these issues are not before us on appeal.
Our next consideration is plaintiff’s contention that although he may not have had a legal lease on the property after September, 1950, the relationship of landlord and tenant was in effect, and that he continued to have certain rights until the judicial decree in 1957, and that defendants violated these rights by wrongful acts which caused him damages. Plaintiff says that the defendants attempted to oust him by illegal means, by appointing or attempting to appoint his tenant, Jarrell, as caretaker of the property and telling Jarrell not to pay rent to the plaintiff. Plaintiff maintains that this constituted an attempted enforcement of a legal right, other than through the courts, for which damages should be allowed.
The evidence shows that George W. Wise, acting on behalf of the defendants, told J. T. Jarrell that he did not think the plaintiff’s lease was valid, and that if he were Jarrell, he would not pay any money to the plaintiff. He also told Jarrell that Jarrell could live on the property for the rest of his life as far as he was concerned. In addition, when J. T. Jarrell was sued by plaintiff, George W. Wise assisted Jarrell by typing an answer, under the directions of Jarrell, wherein Jarrell alleged that he had never leased any land from plaintiff, as plaintiff did not have a lease, and that he had been appointed by the owners of the property as caretaker.
In reviewing the principles of law involved, we note that LSA-C.C. Article 2692 provides that:
“The lessor is bound * * * 3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.” (Emphasis added).
The article sets forth clearly that the duty of the lessor to maintain the lessee in peaceable possession is limited to the duration of a lawful lease held by the lessee. This is in line with the general common law expressed in 52 C.J.S. Landlord and Tenant § 460, P. 181, to-wit:
“Action for damages. A tenant who, being lawfully in possession, is wrongfully evicted by his landlord before the expiration of his term may bring an action for the resulting damages. He is not confined to an action of forcible entry and detainer to regain possession or to an action for breach of covenant; he has a cause of action and may sue in tort, as by resorting to the ordinary action of trespass, where the eviction was forcible.
******
“It is essential to a recovery of damages by a tenant for an eviction that there shall have been an eviction and that plaintiff shall have been a tenant at the time thereof. Ordinarily a tenant is not entitled to damages if at the time of the alleged eviction he was in wrongful possession because of his termination of his tenancy by expiration of his lease or by his default in the payment of rent; * *
 The above quotation from 52 C.J., S. Landlord and Tenant § 460, pp. 181, 182, continues by noting an exception to the general law as found in Louisiana jurisprudence, to-wit:
“ * * * it has been held that, notwithstanding the contract of lease had fully ended by the tenant’s failure to pay rent, the landlord is not excused from liability for instigating a disturbance on the premises, padlocking the premises, and forcibly detaining the tenant’s property during his absence. *424 A lessee subletting in violation of the lease is not entitled to recover damages from the lessor. * * * ”[2]
The exception to the general rule is prompted by other considerations, such as the right of privacy and the laws abhorrent to violence. The cases cited by plaintiff herein are based on these exceptions. However, the exception should not be extended to cover situations such as the one on appeal, where no forcible or physical means were used in an effort to regain possession after the termination of the lease. A landlord should not be forced to tread at his own peril in assuming his rights to property .after the termination of a lease, but should be'allowed to resume his rights to possession, as long as he regains them by peaceable means, without threats or force, and without violating other rights. There is no evidence of any physical acts taken by defendants herein to regain possession of the leased premises, and apparently actual possession was not regained until 1957. We agree with the trial court in that the defendants had a right to abrogate the lease and inform the sub-tenant, Jarrell, of this fact. Since the plaintiff’s lease had expired, defendants could have demanded rental of Jarrell, who occupied the premises, but instead they told him he could continue to occupy the premises. The evidence shows that George Wise denied telling Jarrell not to pay rental to plaintiff, although he expressed his opinion to' Jarrell that plaintiff did not hold a lease and that if he were Jarrell, he would not pay any money to plaintiff. As to typing the answer for Jarrell, George Wise testified that he typed what Jarrell instructed him to type. We hold that such actions do not constitute a basis for a suit for damages under our jurisprudence, since they occurred after the termination of plaintiff’s lease.
Since plaintiff has made other demands for damages, each item will be discussed in the order it was itemized in plaintiff’s petition, to-wit:
“Rent uncollectible, or nearly so -$ 375.00
Arbitrary breach of contract $1,000.00
Slander, libel & unnecessary work -$ 500.00”
As to the first item, the evidence shows that plaintiff was unable to collect his judgment for rent against Jarrell in suit No. 29,310, in the amount of $175.00, plus interest and costs, less a credit of $35.-15 resulting from a seizure and sale. This rental was for the period after March 23, 1953, at a time when plaintiff did not hold a legal lease on the premises. The judgment was obtained against Jarrell inasmuch as Jarrell was estopped to deny the landlord-tenant relationship. We have already determined that the defendants had a legal right to deny the existence of plaintiff’s lease after it terminated in September, 1950. ■ Defendants violated no right of plaintiff through force or other means, so as to raise other considerations, and we can find no basis for a judgment against de- . fendants for the rental of approximately $175.00 which plaintiff is unable to collect from Jarrell.
Plaintiff stresses particularly that the law involved in Hitt v. Herndon, 166 La. 497, 117 So. 568; and Roge v. Kuhlman, (La. App., 3 Cir., 1962), 136 So.2d 819, should apply herein..
In the case of Hitt v. Herndon, supra, the court held that -the conduct of a lessor in the repossession of leased premises and the lessee’s dairy and equipment without process of law, was a violation of the obligation to maintain the lessee in peaceable possession of leased premises and constituted a tort and grave trespass under Article 2692 of the LSA-Civil Code. This case is distinguishable in that it occurred during the lease; forcible means were used; a trespass occurred; and, in fact, *425 the lessor even converted to his own use property previously sold to the lessee.
In the case of Rogé v. Kuhlman, supra, the defendant, who occupied property to the north of the plaintiff’s property, tore down plaintiff’s old fence, erected a new one approximately 300 feet south of the plaintiff’s old fence line, enclosing approximately five (5) acres previously possessed by the plaintiff. In a possessory action, the court ordered the premises restored to plaintiff and rendered judgment of $500.00 for mental anguish and humiliation. This case is distinguishable from the one before us on appeal, in that the defendant committed a trespass and physically disturbed the lawful possession of the plaintiff.
In his brief, plaintiff also maintains that the record shows that defendants interfered with his first tenant, Poole, making it impossible for plaintiff to collect rental from Poole in the amount of $50.00, and that this occurred during the term of plaintiff’s year-to-year lease. The evidence shows that plaintiff attempted to testify to a loss of rental from Poole in the amount of $50.00, but the trial court maintained an exception that this was an attempt to enlarge the pleadings. We find this holding to be correct. The record shows that the plaintiff alleged damages for uncollectible rent from Jarrell of $375.00 in Articles 13 and 14 of his petition, but he did not allege or pray for damages for loss of rent from Poole.
The second item of damages listed, “Arbitrary breach of contract”, is without basis, inasmuch as the decision in the case of Stanfill v. Gibbs, supra, held that plaintiff did not hold any leasehold rights under the original written lease, and that his year-to-year leasehold rights terminated September, 1950. There could be no breach of leasehold rights that have lawfully terminated. In addition, it is noted that the case before us on appeal is based on tort, and not on contract. Any claim on contract would be subject to the exception of jurisdiction ratione personae.
The third item of damages is based on the allegations in three (3) articles in the petition in suit No. 28,459 of the Tenth Judicial District Court.[3] These allegations set forth a demand for the value of two (2) small buildings alleged to have been on the leased premises when R. H. Brigmon took possession. It was coupled with the suit for cancellation of the leasehold rights.
The evidence shows that these two'buildings were located on the leased premises in September, 1940, but that they had been destroyed by a flood in 1945, before plaintiff took possession of the property. In his testimony, plaintiff acknowledged that when he took over the property, he saw three (3) walls and an old torn down chimney, which he recognized as the remains of a house. The evidence shows that the allegations in the petition were made in good faith and that this portion of the demand was abandoned when defendants learned that the buildings were destroyed by a flood in 1945. Since the allegations were material to the cause of action expressed and were made without malice, we find no basis for an award for damages under the jurisprudence of *426 this State. Gosserand v. Gumbel, 154 La. 537; 97 So. 852.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s costs.
Affirmed.

. The wrongful acts were listed as (1) dispossessing plaintiff; (2) “conniving” with his tenant; (3) interference with his possession; (4) taking possession of leased property; and (5) participation in a conspiracy between defendants and plaintiff’s tenant resulting in difficulty in collection of rentals.

. See McCarroll v. Newman, (La.App., 1 Cir., 1937), 176 So. 140.

. Defendant’s petition in suit No. 28,459 contains the following allegations:
“Article 12. That, at the time of the execution of the lease, there were two buildings situated on the property leased, which buildings have been torn down and removed from the property without the consent of your petitioners.
“Article 13. That the buildings consisted of one frame building, which dimensions were approximately 16 feet x 16 feet, and the other of the dimensions of 10 feet x 16 feet, and that the larger building was worth $400.00, and the smaller one was worth $200.00, and that petitioners have not been reimbursed for the value of the buildings.
“Article 14. That the defendant is, therefore, indebted unto your petitioners in the sum of $600.00, with 5% per annum interest from judicial demand, for the value of the buildings, as hereinabove set forth.”